\_\_\_\_\_FILED            \_\_\_\_\_RECEIVED
\_\_\_\_\_ENTERED          \_\_\_\_\_SERVED ON
                         COUNSEL/PARTIES OF RECORD

JAN 22 2024

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GUSTAVO HERNANDEZ,

            Petitioner,

v.

WARDEN REUBART, et al.,

           Respondents.

Case No.: 3:22-cv-00182-LRH-CSD

ORDER GRANTING
MOTION TO DISMISS

[ECF No. 34]

On March 13, 2023, counseled Petitioner Gustavo Hernandez filed his first-amended § 2254 petition. (ECF No. 26.) This matter comes before the Court on Respondents' motion to dismiss Hernandez's first-amended petition. (ECF No. 34.) Hernandez opposed the motion, and Respondents replied. (ECF Nos. 59, 68.) For the reasons stated below, the Court grants the motion.

## I. BACKGROUND

The Nevada Court of Appeals described the crime, as revealed by the evidence at the trial, as follows:

> Hernandez and Rebecca Rios met on a dating app in October 2015. Eventually, Hernandez moved in with Rios and her two daughters, ages five and six, and they lived together for approximately three to four months. Hernandez and Rios got engaged on Valentine's Day, 2016. Soon after the engagement, their relationship began to deteriorate.
> 
> In May, Rios sent Hernandez a text message explaining that they needed to talk about ending their relationship. When Hernandez arrived home, Rios took her daughters upstairs, and left them in a bedroom with an iPad so that they could watch a movie. Rios joined Hernandez but he became agitated while they talked and tried to leave the house. Rios followed Hernandez through a laundry room where Hernandez grabbed her by the shoulders and repeatedly slammed her body against a wall.
> 
> The couple then entered the garage where Hernandez picked up Rios and threw her onto the hood of a car, and then onto the ground. Hernandez then physically forced Rios into the vehicle and drove away, leaving the two children alone at the house.
> 
> While driving the vehicle, Hernandez told Rios that he was taking her to the desert where he was going to bury her. Hernandez then stopped at a gas station to

fill up the gas tank. While Hernandez was outside of the car, Rios attempted to flee. However, she was grabbed by Hernandez who tried to force her back into the car. During the struggle, Rios was able to break free from Hernandez and escape. Hernandez then entered the car, and threatened to kill Rios daughters if she did not get back in the car. Rios refused and Hernandez drove off in the direction of Rios' home.

Rios was able to get a ride to her house. She arrived approximately 30 to 40 minutes after being removed from the residence and saw Hernandez driving away from her home. Rios went inside and found her two daughters unharmed.

(ECF No. 46-14 at 2–3.)

A jury found Hernandez guilty of second-degree kidnapping; child abuse, neglect, or endangerment; aggravated stalking; and preventing or dissuading a witness or victim from reporting a crime or commencing prosecution. (ECF No. 45-2.) Hernandez was sentenced to an aggregate sentence of 119 to 300 months. (*Id.*) Hernandez appealed, and on May 8, 2020, the Nevada Court of Appeals affirmed the conviction but remanded the matter due to a clerical error on the judgment of conviction. (ECF No. 46-17.) The state district court entered an amended judgment of conviction, correcting the clerical error, on July 8, 2020. (ECF No. 46-17.)

Hernandez filed a *pro se* state habeas petition on July 12, 2021. (ECF No. 47-1.) The state district court denied the petition on October 12, 2021. (ECF No. 47-7.) Hernandez appealed, and the Nevada Court of Appeals affirmed on March 9, 2022. (ECF No. 48-13.) Remittitur issued on April 4, 2022. (ECF No. 48-14.)

Hernandez moved to modify his sentence on May 5, 2022, and moved to vacate his sentence on June 10, 2022. (ECF Nos. 48-16, 48-19.) The state court denied both motions. (ECF Nos. 49-4, 49-14.) Hernandez appealed, and the Nevada Court of Appeals affirmed the denial of the former motion and dismissed the appeal on the latter motion. (ECF Nos. 49-24, 49-28.)

Hernandez transmitted his *pro se* federal habeas petition on or about April 26, 2022. (ECF No. 1.) This Court granted Hernandez's motion for appointment of counsel. (ECF No. 11.) In his

counseled first-amended petition, Hernandez raises only one ground for relief: the evidence was insufficient to support his convictions. (ECF No. 26.)

## II.  DISCUSSION

Respondents move to dismiss Hernandez's first-amended petition, arguing that it is untimely.[1] (ECF No. 34.)

The Antiterrorism and Effective Dealt Penalty Act (AEDPA) establishes a one-year limitation period for state prisoners to file a federal habeas petition under 28 U.S.C. § 2254. The one-year limitation period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). For a Nevada prisoner pursing a direct appeal, a conviction becomes final when the 90-day period for filing a petition for certiorari in the Supreme Court of the United States expires after a Nevada appellate court has entered judgment or the Supreme Court of Nevada has denied discretionary review. *Harris v. Carter*, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005); Sup. Ct. R. 13. The AEDPA limitation period is then tolled while a "properly filed" state post-conviction petition or other collateral review proceeding is pending. 28 U.S.C. § 2244(d)(2).

Hernandez's conviction became final when the time expired for filing a petition for writ of certiorari with the United States Supreme Court on October 5, 2020.[2] The federal statute of

---

[1] Respondents also argue that Hernandez's sole ground for relief is unexhausted. However, because this Court finds that Hernandez's petition is untimely, it need not address exhaustion. *See Cooper v. Neven*, 641 F.3d 322, 327–28 (9th Cir. 2011) (explaining that when a district court concludes that a particular issue is dispositive, it need not "consider alternative reasons for dismissing the petition").

[2] This Court takes into consideration that the Supreme Court gave petitioners an extra 60 days to file cert petitions at this time due to the pandemic.

limitations thus began to run the following day: October 6, 2020. The federal statute of limitations expired 365 days later on October 6, 2021. Although Hernandez filed a state habeas petition on July 12, 2021, it was not properly filed because it was filed after the one-year state deadline expired. Accordingly, absent another basis for tolling or delayed accrual, Hernandez's *pro se* federal petition, submitted in April 2022, was untimely by 6 months.

Hernandez concedes that his one-year statutory period under § 2244(d)(1) expired prior to the filing of his instant federal habeas petition, but he argues that he is entitled to equitable tolling to excuse his failure to file within the one-year period. (ECF No. 59 at 5.) The Supreme Court has held that AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, equitable tolling is appropriate only if (1) a petitioner has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). To satisfy the first element, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc) (expressly rejecting stop-clock approach for evaluating when petitioner must be diligent). To satisfy the second element, a petitioner must demonstrate that the "extraordinary circumstances" were the *cause* of his untimeliness. *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017). In other words, a petitioner must demonstrate "that some external force caused his untimeliness, rather than mere oversight, miscalculation or negligence." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (internal quotation omitted).

Hernandez contends that the Covid-19 pandemic constituted an extraordinary circumstance warranting equitable tolling. (ECF No. 59 at 5.) In support of this contention, Hernandez explains the following: (1) the Eighth Judicial District Court closed their clerk's office on March 23, 2020, and fully reopened on June 4, 2021, (2) while the clerk's office was closed, incarcerated *pro se* litigants were required to mail their filings to a certain address, (3) the law library was difficult to access during the pandemic, (4) Hernandez suffered from increased and debilitating anxiety during the pandemic, (5) he contracted Covid-19 in December 2020 and was quarantined for several weeks, (6) on June 10, 2021, he wrote to the warden about issues with mailing his legal documents because the mail room would not weigh legal mail or let inmates know the amount of postage that was needed, meaning he had to figure out the necessary postage by trial and error, (7) he sent his petition to the warden on June 25, 2021, but the warden told Hernandez he was not his legal representative,[3] and (8) his unit in the prison was on lockdown around the time his federal habeas petition was due (*Id.* at 8–16.)

This Court recognizes the extraordinary circumstances brought about by Covid-19. Indeed, this Court granted prospective equitable tolling due to Covid-19 concerns. *See Dunn v. Baca*, 3:19-cv-00702-MMD-WGC, 2020 WL 2525772 (D. Nev. May 18, 2020); *Mullner v. Williams*, 2:20-cv-00535-JAD-BNW, 2020 WL 6435751 (D. Nev. November 2, 2020); *Dale v. Williams*, 3:20-cv-00031-MMD-CLB, 2020 WL 4904624 (D. Nev. August 20, 2020). However, these cases dealt with early pandemic related issues. Contrarily, Hernandez's AEDPA statute of limitations was running during a later timeframe: October 6, 2020, until October 6, 2021. During that time, pandemic-related restrictions and limitations had eased, and any remaining restrictions and

---

[3] It is not apparent what documents he gave to the warden, as the inmate request form just states "legal mail." (ECF No. 60-5.)

limitations did not rise to the level of an extraordinary circumstance. *See Camacho v. Daniels*, 2:21-cv-01107-APG-VCF, 2022 WL 1001560, at *1 (D. Nev. April 1, 2022) (addressing the petitioner's contention that he was entitled to equitable tolling because "he was unable to access the law library, to make copies of documents, to send legal mail through the law library, or to do legal research" and concluding that "[e]ither those restrictions were eased before the one-year period expired in his case [on April 16, 2021], or they did not truly prevent him from timely filing his petition"). In fact, this Court "received 175 petitions for a writ of habeas corpus under 28 U.S.C. § 2254 between March 12, 2020, and April 16, 2021," demonstrating that "[i]f those people were able to file habeas corpus petitions during that time, then the COVID-19 restrictions could not have prevented [other petitioners] from filing . . . petition[s] during that time." *Id.*; *see also Coil v. Johnson*, 2:22-cv-01428-GMN-BWN, 2023 WL 2042071, at *4 (D. Nev. February 16, 2023) ("[E]ven if Covid-19 lockdown issues entitled him to equitable tolling . . . , [Petitioner's] September 1, 2022, federal petition would still be untimely because it was filed more than a year after Covid-19 lockdown issues lifted in the fall of 2020.").

       This Court also recognizes that Hernandez had issues with anxiety and with obtaining the amount of postage necessary to mail his legal documents. (*See* ECF No. 60-4.) However, whatever barriers these problems presented, they were not extraordinary or insurmountable from October 2020 to October 2021 in light of the following: (1) in December 2020, Hernandez filed a motion to proceed *in forma pauperis* and an affidavit in support of same in state court (ECF No. 35-3 at 7); (2) in May 2021, Hernandez filed a motion for enlargement of time to file his state habeas petition (ECF No. 46-20); (3) in July 2021, Hernandez filed an *ex parte* motion for appointment of counsel and request for evidentiary hearing, as well as his state habeas petition (ECF Nos. 46-

23, 47-1); and (4) in October 2021, Hernandez filed two different notices of appeal following the state district court's denial of his state habeas petition (ECF Nos. 48-2, 48-4).

Accordingly, even applying a flexible, totality-of-the-circumstances approach to evaluating Hernandez's equitable tolling argument, in light of the particular circumstances of this case, there is no basis for equitable tolling. Specifically, Hernandez fails to establish the existence of an extraordinary circumstance or that any extraordinary circumstance was the cause of the untimely filing of his federal habeas petition. *See Smith*, 953 F.3d at 600. Because Hernandez fails to demonstrate that equitable tolling is warranted, this action is dismissed as untimely.

### III. CONCLUSION

It is therefore ordered that the motion to dismiss [ECF No. 34] is granted. This action is dismissed with prejudice as untimely.

It is further ordered that a certificate of appealability is denied because reasonable jurists would not find the dismissal of this action to be debatable or wrong.

It is further ordered that the Clerk of Court enter judgment accordingly and close this case.

DATED THIS 22nd day of January 2024.

LARRY R. HICKS
UNITED STATES DISTRICT COURT